Leah T. Handelman
Randall J. Colbert
GARLINGTON, LOHN & ROBINSON, PLLP
350 Ryman Street • P. O. Box 7909
Missoula, MT  59807-7909
Phone (406) 523-2500
Fax (406) 523-2595
lthandelman@garlington.com
rjcolbert@garlington.com


Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>BIG SKY SHEDS, LLC a/k/a BIG SKY SHEDS AND CABINS,<br><br>Defendants. | Cause No.<br><br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

Comes now, Plaintiff Scottsdale Insurance Company ("Scottsdale"), by and through its counsel, Garlington, Lohn, & Robinson, PLLP for its Complaint for Declaratory Judgment, states and alleges as follows:

4861-6869-3365                                                                                    1

## I.    PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Scottsdale is an insurance company organized under the laws of Ohio and with its principal place of business in Scottsdale, Arizona.  Scottsdale is authorized to conduct business in Montana.

2.    Defendant Big Sky Sheds, LLC ("Big Sky Sheds") is a Montana business with a mailing address of 104 Anderson PL, Polson, MT 59860.  Upon information and belief Big Sky Sheds conducts business under an assumed business name of Big Sky Sheds and Cabins.

3.    Upon information and belief, Big Sky Sheds, is formally organized in Polson, Montana, and owns property and conducts business in Anaconda, Montana.

4.    Upon information and belief, Big Sky Sheds is owned by Max Koehn, a resident of Montana.

5.    Underlying plaintiff Benjamin Stopani ("Benjamin") is an individual who, upon information and belief, was an employee of Big Sky Sheds in relation to the events giving rise to this action.

6.    Underlying plaintiff Anthony Stopani ("Anthony") is an individual who, upon information and belief, was an employee of Big Sky Sheds in relation to the events giving rise to this action.

7.      Scottsdale issued a Commercial General Liability Policy bearing policy number CPS7470419 to Big Sky Sheds and Cabins, the Named Insured, with a period from 11/01/2021 to 11/01/2022 ("Policy").  A true and correct copy of the Policy is attached as Exhibit A, with premium information redacted.

8.      Big Sky Sheds has demanded coverage under the Policy for claims brought against it by Benjamin in an action styled:  *Benjamin Stopani v. Big Sky Sheds, LLC, a Montana Limited Liability Company* (3rd Jud. Dist. Ct. Nov. 28, 2022) (No. DV-22-109) ("Benjamin Action").  A true and correct copy of the Complaint and Demand for Jury Trial ("Benjamin Complaint") initiating the Benjamin Action is attached as Exhibit B.

9.      Big Sky Sheds has also demanded coverage under the Policy for claims brought against it by Anthony in an action styled: *Anthony Stopani v. Big Sky Sheds, LLC, a Montana Limited Liability Company* (3rd Jud. Dist. Ct. Nov. 28, 2022) (No. DV-22-108) ("Anthony Action").  A true and correct copy of the Complaint and Demand for Jury Trial ("Anthony Complaint") initiating the Anthony Action is attached as Exhibit C.

10.     The Anthony Action and Benjamin Action are hereinafter collectively referred to as the "Underlying Actions," the Anthony Complaint and Benjamin Complaint are hereinafter collectively referred to as the "Underlying Complaints,"

and Anthony and Benjamin are hereinafter collectively referred to as "the Stopanis."

11.     In the Underlying Actions, the Stopanis seek unspecified amounts of damages for lost wages and fringe benefits, punitive, and exemplary damages for alleged wrongful termination of their employment by Big Sky Sheds.

12.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because the amount in controversy in each of the Underlying Actions exceeds $75,000.00 and Scottsdale is a citizen of a different state than Big Sky Sheds.

13.     Venue is proper in the Missoula Division of the District of Montana as the Policy at issue names Big Sky Sheds as located in Lake County, Montana.

14.     There is an actual justiciable controversy between Scottsdale and Big Sky Sheds concerning their rights and obligations under the Policy.

## II.    GENERAL ALLEGATIONS

15.     Scottsdale repleads and incorporates by reference Paragraphs 1–14 above.

16.     The parties' rights and obligations under the Policy, specifically whether Scottsdale has a duty to defend or indemnify Big Sky Sheds on the claims alleged in the Underlying Action, are the subject of this action.

## A.    The Underlying Actions

17.    On November 11, 2022, the Stopanis filed their respective complaints in the Montana Third Judicial District Court, Deer Lodge County against Big Sky Sheds.

18.    Although the Underlying Complaints were filed separately, except for the named Plaintiff, the Underlying Complaints contain the very same factual allegations and counts, set forth as follows:

19.    The Stopanis are residents of Anaconda, Montana, and were employed as non-probationary employees of Big Sky Sheds.  Exs. B-C, ¶¶ 1, 8.

20.    The Underlying Complaints claim that in October of 2021, the Stopanis notified the Montana Department of Labor and Industry of allegedly unethical and illegal actions taken by Big Sky Sheds.  Exs. B-C, ¶ 13.

21.    In March of 2022, another Big Sky Sheds employee, Brittany Fox, filed an Occupational Safety and Health Association ("OSHA") complaint regarding unsafe working conditions, and had filed claims regarding alleged sexual harassment by Big Sky Sheds with the Montana Human Rights Board ("MHRB"). Exs. B-C, ¶¶ 15–16.

22.    According to the Underlying Complaints, Mrs. Fox requested the Stopanis provide information related to the sexual harassment investigation, which involved claims made against Max Koehn.  Exs. B-C, ¶ 17.

23.    The Underlying Complaints also allege that the Stopanis were requested to provide information to the OSHA investigator relative to the unsafe working conditions.  Exs. B-C, ¶ 18.

24.    The Underlying Complaints state that Max Koehn, acting as an agent of Big Sky Sheds, learned of the Stopanis' willingness to cooperate with both the MHRB and OSHA investigations and terminated the Stopanis on April 18, 2022. Exs. B-C, ¶¶ 20, 22.

25.    According to the Underlying Complaints, the Stopanis were terminated from employment at Big Sky Sheds during their MHRB interviews, and two hours before each was scheduled to be interviewed by the OSHA investigator. Exs. B-C, ¶ 22.

26.    The Stopanis subsequently made claims for discrimination with the EEOC, which issued a right to sue on August 26, 2022.  Exs. B-C, ¶ 23.

27.    Based on these factual allegations, the Underlying Complaints allege the following identical counts:  Count I – Wrongful Termination: Retaliation for Refusal to Violate Public Policy in violation of Mont. Code Ann. § 39-2-904(1)(a); Count II – Wrongful Termination: Lack of Good Cause for Discharge, in violation of Mont. Code Ann. § 39-2-904(1)(b); and Count III – Retaliation, in violation of Mont. Code Ann. § 49-2-301.  Exs. B-C, ¶¶ 24–42.

28.    Count I specifically alleges that the Stopanis were terminated due to cooperating with the OSHA investigation and reporting ongoing violations of public policy to OSHA.  Exs. B-C, ¶¶ 24–30.

29.    Count II specifically alleges that the Stopanis were terminated, without good cause and with no reasons given justifying their termination other than "the obvious desire to terminate [them] before the OSHA investigator arrived at the work site."  Exs. B-C, ¶¶ 31–37.

30.    Count III specifically alleges that the Stopanis were additionally terminated as retaliation for participating in the investigation of sexual harassment claims against Big Sky Sheds.  Exs. B-C, ¶¶ 38–42.

31.    The Complaints claims for Exemplary Damages, and in their Prayers for Relief, request damages amounting to no less than four years of the Stopanis' lost wages and fringe benefits, for punitive damages, for an award of damages sustained due to Big Sky Shed's alleged retaliation, and for costs and attorney fees. Exs. B-C, ¶¶ 43–44.

**B.    Claim Tenders and Scottsdale's Responses**

**i.    Benjamin Action**

32.    Big Sky Sheds tendered the Benjamin Action to Scottsdale for defense under the Policy.

33.    Scottsdale issued a reservation of rights letter in the Benjamin Action to Big Sky Sheds on June 20, 2023, under which it agreed to provide Big Sky Sheds with a defense for the allegations in the Benjamin Complaint under a complete reservation of rights.  A true and correct copy of this June 20, 2023, reservation of rights letter is attached as Exhibit D ("Benjamin ROR").

**ii.    Anthony Action**

34.    Big Sky Sheds did not notify Scottsdale of the Anthony Action at the time it notified Scottsdale of the Benjamin Action.

35.    Scottsdale was unaware of the Anthony Action until July 24, 2023, when Big Sky Shed's Scottsdale-retained counsel for the Benjamin Action notified Scottsdale that they were asked by the Stopanis' counsel if they were representing Big Sky Sheds in the Anthony Action as well.

36.    At that point, Scottsdale obtained a copy of the Anthony Complaint and a copy of the docket in the Anthony Action.  A true and correct copy of the docket in the Anthony Action as of July 24, 2023, is attached as Exhibit E ("Docket Sheet").

37.    The Docket Sheet in the Anthony Action indicated that a default had been entered against Big Sky Sheds on July 18, 2023.

38.    Scottsdale further learned that a damages hearing on the default was to take place on July 31, 2023, only six days after Scottsdale first received notice of the Anthony Action.

39.    Scottsdale immediately began efforts to retain counsel to represent Big Sky Sheds in the Anthony Action, and requested the same counsel retained in the Benjamin Action to provide a defense.

40.    Scottsdale simultaneously issued a reservation of rights letter to Big Sky Sheds relative to the Anthony Action, under which it agreed to provide Big Sky Sheds with a defense for the allegations in the Anthony Complaint under a complete reservation of rights.  A true and correct copy of this July 27, 2023, reservation of rights letter is attached as Exhibit F ("Anthony ROR").

41.    Scottsdale was able to retain Big Sky Shed's counsel in the Benjamin Action to additionally represent Big Sky Sheds in the Anthony Action.

42.    On July 31, 2023, the Scottsdale-retained counsel appeared at the damages hearing in the Anthony Action on behalf of Big Sky Sheds.

43.    Upon information and belief, the entry of default was not vacated following the hearing and competing motions regarding the propriety of vacating a default judgment have been filed and are pending the court's decision in the Anthony Action.

44.     As a result of this, the default in the Anthony Action remains in effect at the time of this filing and, as a matter of law, Big Sky Sheds is liable for the counts in the Anthony Complaint as alleged with only the calculation of damages remaining to be completed.

**C.     Relevant Policy Provisions**

45.     The Policy contains a Commercial General Liability Coverage Form with the following relevant coverage provisions:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

****

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who is an insured.

****

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against

any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

****

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

****

**2.** **Exclusions**

This insurance does not apply to:

**a.** **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

****

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1.** **Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking

damages for "personal and advertising injury" to which this insurance does not apply. …

**\*\*\*\***

**2.    Exclusions**

This insurance does not apply to:

**a.    Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

Ex. A at 17-18, 22.

46.    The Policy's CGL Form contains the following definitions:

**SECTION V – DEFINITIONS**

**\*\*\*\***

**3.**    "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

**\*\*\*\***

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.**    False arrest, detention or imprisonment;

**b.**    Malicious prosecution;

   **c.**     The wrongful eviction from, wrongful entry into,
            or invasion of the right of private occupancy of a
            room, dwelling or premises that a person
            occupies, committed by or on behalf of its owner,
            landlord or lessor;

   **d.**     Oral or written publication, in any manner, of
            material that slanders or libels a person or
            organization or disparages a person's or
            organization's goods, products or services;

   **e.**     Oral or written publication, in any manner, of
            material that violates a person's right of privacy;

   **f.**     The use of another's advertising idea in your
            "advertisement"; or

   **g.**     Infringing upon another's copyright, trade dress
            or slogan in your "advertisement".

                          ****

**17.**   "Property damage" means:

   **a.**     Physical injury to tangible property, including all
            resulting loss of use of that property. All such
            loss of use shall be deemed to occur at the time of
            the physical injury that caused it; or

   **b.**     Loss of use of tangible property that is not
            physically injured. All such loss of use shall be
            deemed to occur at the time of the "occurrence"
            that caused it.


                          ****

**18.**   "Suit" means a civil proceeding in which damages
        because of "bodily injury", "property damage" or
        "personal and advertising injury" to which this
        insurance applies are alleged. "Suit" includes:

**a.**     An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.**     Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Ex. A at 29, 31-32.

47.    The Policy contains the following Employment-Related Practices

Exclusion:

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**     The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)**    A person arising out of any:

    **(a)**    Refusal to employ that person;

    **(b)**    Termination of that person's employment; or

    **(c)**    Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

    **(2)**    The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

    **(1)**    Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

    **(2)**    Whether the insured may be liable as an employer or in any other capacity; and

    **(3)**    To any obligation to share damages with or repay someone else who must pay damages because of the injury

**B.**    The following exclusion is added to Paragraph **2.**, **Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

    **(1)**    A person arising out of any:

        **(a)**    Refusal to employ that person;

        **(b)**    Termination of that person's employment; or

        **(c)**    Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)**    The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)**    Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)**    Whether the insured may be liable as an employer or in any other capacity; and

**(3)**    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Ex. A at 34.

48.    The Policy contains the following Commercial General Liability

Conditions under Section IV:

**Section IV – Commercial General Liability Conditions**
. . .
**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)**    How, when and where the "occurrence" or offense took place;

> **(2)** The names and addresses of any injured persons and witnesses; and
>
> **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> **b.** If a claim is made or "suit" is brought against any insured, you must:
>
> **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
>
> **(2)** Notify us as soon as practicable.
>
> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> **c.** You and any other involved insured must:
>
> **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>
> **(2)** Authorize us to obtain records and other information;
>
> **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
>
> **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
>
> **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Ex. A at 27.

49.    The Policy contains the following Punitive or Exemplary Damage

Exclusion:

## PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

In consideration of the premium charged, it is agreed that this policy
does not apply to a claim of or indemnification for punitive or
exemplary damages.

Punitive or exemplary damages also include any damages awarded
pursuant to statute in the form of double, treble or other multiple
damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within
coverage provided under the policy, seeking both compensatory and
punitive or exemplary damages, then the Company will afford a
defense to such action; however, the Company will have no
obligation to pay for any costs, interest or damages attributable to
punitive or exemplary damages.

Ex. A at 69.

50.    Other provisions, conditions, or exclusions in the Policy may also

limit or preclude Scottsdale's obligations under the circumstances presented.

## III.    COUNT I – DECLARATORY JUDGMENT

51.    Scottsdale repleads and incorporates by reference Paragraphs 1–50

above.

52.    Scottsdale has no duty to defend or indemnify Big Sky Sheds in the

Underlying Actions, in whole or in part, due to one or all of the following reasons:

a.    The Stopanis' claims for purely economic losses do not constitute "bodily injury" or "property damage" under the Policy and therefore, there is no coverage under the Policy's general coverage provision.

b.    The Underlying Complaints allege all of the Stopanis' damages were caused by Big Sky Sheds' intentional actions and thus are excluded from coverage under the Expected or Intended Injury and/or Knowing Violation of Rights of Another exclusion and/or such actions do not constitute an "occurrence" as defined by the Policy.

c.    The Underlying Complaints allege all of the Stopanis' damages were caused by Big Sky Shed's employment-related actions and, thus, are excluded from coverage under the Employment-Related Practices exclusions.

d.    Scottsdale was materially and substantially prejudiced by Big Sky Sheds' failure to timely notify Scottsdale of the Anthony Action and therefore coverage under the Policy is precluded in the Anthony Action pursuant to the notice-prejudice rule and the Policy's Commercial General Liability condition regarding an insured's duties in the event of an occurrence, offense, claim or suit.

e.    The Policy's Punitive or Exemplary Damages Exclusion Endorsement precludes coverage for any punitive or exemplary damages assessed against Big Sky Sheds.

Other facts and circumstances documented during this proceeding may further limit Scottsdale's duty to defend or indemnify Big Sky Sheds in either of the Underlying Actions.

### IV.    PRAYER FOR RELIEF

**WHEREFORE**, Scottsdale requests the following relief:

1.    For Count I – Declaratory Judgment, a judicial declaration that Scottsdale has no duty to defend or indemnify Big Sky Sheds, in whole or in part, in connection with the Underlying Actions;

2.    For other such relief as the Court deems just.

DATED this 10th day of January 2024.

/s/  Leah T. Handelman
Attorneys for Plaintiff